IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 5, 2021

**PERRY BRENT LANHAM v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Chester County**
**No. 20-CV-51       Roy B. Morgan, Jr., Judge**

_____

**No. W2021-00310-CCA-R3-PC**

_____

The Petitioner, Perry Brent Lanham, pleaded guilty to burglary and theft of property valued $2,500 or more, and he received an effective eight-year sentence on probation supervised by community corrections. The Petitioner filed a petition for post-conviction relief, contending that he received ineffective assistance of counsel and that he did not plead guilty knowingly and voluntarily. Following a hearing, the post-conviction court denied the petition, and the Petitioner appeals. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Joseph T. Howell, Jackson, Tennessee, for the appellant, Perry Brent Lanham.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

The record reflects that the underlying case arose when the Petitioner drove away with a tractor belonging to the victim, Mr. Danny Jackson, and left it in a damaged condition. The tractor was discovered by law enforcement abandoned in the road, and the Petitioner was found walking down the road. The Petitioner was charged initially

with burglary, theft of property valued $2,500 or more, and vandalism, but the Petitioner was only indicted for burglary and theft. According to the transcript of the plea hearing, on November 25, 2019, he pleaded guilty to burglary and theft of property valued at $2,500 or more.[1] Pursuant to the plea agreement, he agreed to serve two concurrent eight-year sentences on probation supervised by community corrections and agreed to pay $4,627.44 in restitution to the victim.

At the plea colloquy, the Petitioner affirmed that he understood the offenses and ranges of penalties he faced, including the type of criminal offenses charged, the minimum and maximum penalties, maximum fines associated with the offenses, his release eligibility, the charges to which he was pleading guilty, and the agreed-upon sentence. He agreed that he understood his rights, including those afforded to him if he chose to proceed to trial, that he was waiving those rights by pleading guilty. He understood that by pleading guilty he was admitting guilt to the offenses charged and that the convictions would be on his record if the trial court accepted his pleas. The Petitioner testified that no one had applied force or pressure or made threats or promises to convince him to plead guilty and that he was satisfied with trial counsel's representation. He agreed that trial counsel reviewed the indictments with him and that the facts of the case as set forth in the indictments were substantially correct.

The trial court found that the Petitioner's pleas were entered voluntarily and intelligently and that there was a factual basis permitting the court to accept his pleas. The trial court accepted the Petitioner's pleas, entered the judgments, and imposed the effective eight-year sentence on probation supervised by community corrections. According to the post-conviction court's order, the Petitioner's alternative sentence was revoked on September 4, 2020, following a revocation hearing, and he was ordered to serve his sentences in confinement.

The Petitioner filed a timely pro se petition for post-conviction relief and an amended petition following the appointment of counsel, alleging that he received ineffective assistance of counsel and that he did not enter his pleas knowingly and voluntarily. The Petitioner maintained multiple times during the post-conviction hearing that he believed unspecified individuals had killed acquaintances and were trying to kill him and that the fear caused by this belief made him attempt to escape in the victim's tractor. He stated that he knew the victim of the offense, had worked for him, and attempted to knock on his door before taking the tractor. He testified that he informed trial counsel of this information to substantiate a duress defense, but she disregarded it and thought he was "crazy." He stated that he did not inform the trial court of his beliefs because he felt that no one believed him.

---

[1] The written plea agreement and the judgments are not included in the appellate record.

On cross-examination, the Petitioner testified that he did not inform police that he stole the tractor in order to escape harm because they already knew about the threat to his life, and he denied recently fabricating the story. He denied that trial counsel talked to him about his case but stated that she conveyed two plea offers. One offer would have required him to serve two years in confinement, and another offer, which he later accepted, would have required him to serve an alternative sentence of eight years. He agreed that he understood the conditions of his pleas. He also agreed that he had at least nine prior convictions, but he maintained that he was not familiar with the criminal justice system and just accepted the plea offers that were given to him.

On redirect examination, the Petitioner testified that he did not understand the charges to which he was pleading guilty and that at the time of the pleas, he believed he was only charged with joyriding. On recross-examination, he stated that he only said he understood he was charged with burglary at the plea colloquy hearing because he was confused and that his "mind was somewhere else." He testified that he realized he had been overcharged when another inmate discussed his case with him.

Trial counsel testified that she was appointed in general sessions court to represent the Petitioner in September of 2019 and continued to represent him after he was indicted. According to trial counsel, the Petitioner indicated that he would accept a plea offer permitting him to be released from confinement immediately. She stated that she conveyed two plea offers to the Petitioner. The first plea offer permitted the Petitioner to plead guilty and receive four years in confinement as a Range I offender, but the Petitioner was not interested in that offer. The second plea offer contained options, including four years suspended to probation after service of eleven months, twenty-nine days in confinement, six years suspended to probation after service of 180 days in confinement, or eight years on probation supervised by community corrections. The Petitioner informed trial counsel that he was interested in accepting the offer allowing him to serve eight years on probation supervised by community corrections.

Trial counsel testified that she explained the plea agreement to the Petitioner the morning of the plea colloquy hearing. She discussed the details of the Petitioner's plea agreement with the Petitioner, and she stated that there was no indication that he did not understand the agreement. She stated that if she had believed the Petitioner had a viable mental health defense, she would have requested an evaluation but that she did not believe an evaluation was necessary. She recalled that the Petitioner accepted the pleas at the colloquy without hesitation and appeared to understand what he was doing by accepting the plea agreement.

Trial counsel confirmed that she discussed the discovery with the Petitioner. She recalled receiving letters from the Petitioner regarding his case that "sounded completely

normal." When she talked to the Petitioner, he discussed his case normally but then "completely changed gears" and began going "on and on" about the people who he believed were chasing him. She recalled that the Petitioner did not mention a duress defense while the case was pending in general sessions court. She believed he began advancing the theory that he stole the tractor to escape murder after another inmate had similar conspiracy theories. She investigated the information the Petitioner provided her about the alleged duress, including researching the names of individuals and contacting his attorney in another county, but she did not find any information that related to the duress theory. She stated that she did not interview the victim but investigated his name online and did not find any connection to the Petitioner. She explained to the Petitioner that it would have been "hard to substantiate joyriding when . . . [the tractor] was missing for quite a bit of time and there was quite a bit of damage."

The post-conviction court made a general credibility finding in favor of trial counsel. The court found that trial counsel conferred with the Petitioner by meeting with him on more than one occasion, discussed discovery with him, and conveyed the details of the State's plea offers. The court credited trial counsel's testimony that she discussed with the Petitioner his claims of duress and that after investigating them, she could not find any information to support the claims. The court found that trial counsel's investigation into the Petitioner's claims was adequate. The court observed that the Petitioner recalled discussions with trial counsel and the details of the multiple offers he received. The court found that the Petitioner's recollection of those events demonstrated his "understanding of the proceedings and what occurred with his attorney." The court credited trial counsel's testimony that she informed the Petitioner of the details of the offers, that the Petitioner informed trial counsel that he would accept an offer allowing him to be released from confinement, and that when he received such an offer, he accepted it.

The post-conviction court found that during the plea hearing, the Petitioner was advised of the crimes to which he was pleading guilty, the ranges of punishment, and his actual sentences under the agreement. The court noted that the trial court confirmed at the plea colloquy hearing the Petitioner's understanding of the plea agreement. The post-conviction court found that "the [Petitioner] under no circumstances could have thought he was pleading to joyriding." The post-conviction court found that the Petitioner's claims were prompted by his change of situation when his probation was revoked and when another inmate began discussing his case with him in confinement. The court found that the Petitioner had nine prior criminal offenses that demonstrated his experience with the criminal justice system and that "[h]e understood what took place at the guilty plea." The court concluded that the Petitioner failed to establish that trial counsel was ineffective or that his pleas were not entered knowingly and voluntarily.

**ANALYSIS**

The Petitioner contends that the post-conviction court erred in denying his petition because he received ineffective assistance of counsel and his guilty pleas were not entered knowingly and voluntarily. A petitioner may request post-conviction relief by asserting that his conviction or sentence is void or voidable because of the abridgment of his constitutional rights provided by the Tennessee or the United States Constitutions. T.C.A. § 40-30-103. To obtain post-conviction relief, a petitioner must prove the allegations of fact made in the petition by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, the post-conviction court's findings of fact are conclusive unless the evidence preponderates against them. *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). "[Q]uestions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge." *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001) (citing *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997)). Additionally, appellate courts may not "substitute their own inferences for those drawn by the trial court." *Id.* (citing *Henley*, 960 S.W.2d at 579). This court reviews "a post-conviction court's conclusions of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness." *Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013) (citations omitted).

**I. Ineffective Assistance of Counsel**

The Petitioner alleges that he received ineffective assistance of counsel. A criminal defendant has a right to the assistance of counsel under the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to assistance of counsel inherently guarantees that counsel's assistance is "effective." *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). To prove that counsel was ineffective, a petitioner must show that (1) counsel performed deficiently and (2) such deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88.

To establish deficient performance, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. This standard requires a petitioner to demonstrate that the "services rendered or the advice given" were "'below the range of competence demanded of attorneys in criminal cases.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Counsel must have made errors so serious that counsel was not functioning as the "'counsel'" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Measuring counsel's performance requires giving deference to

counsel's decisions, and courts must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 669. Accordingly, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). The reviewing court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland* 466 U.S. at 689). We also apply the *Strickland* standard for determining deficiency when reviewing "challenges to guilty pleas based on ineffective assistance of counsel." *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

To demonstrate that counsel's deficient performance prejudiced the defense in the context of a guilty plea, a petitioner must prove that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because a petitioner must establish deficiency and prejudice to prove ineffective assistance of counsel, a court need not address both prongs where the petitioner has failed to establish one of them. *See Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

On appeal, the Petitioner maintains that trial counsel's failure to investigate witnesses and facts to support his claim of duress and to explain the plea agreement to him rendered his pleas involuntary. Trial counsel testified that, although she did not interview the victim, her online research regarding the victim did not connect the victim to the Petitioner in any way. The post-conviction court credited trial counsel's testimony that she discussed the Petitioner's beliefs that he claims put him under duress and that she could not locate any information to confirm the Petitioner's duress claims. We defer to its credibility finding. *See Fields,* 40 S.W.3d at 456. Nothing in the record rebuts the presumption that trial counsel's performance was objectively reasonable. Therefore, the Petitioner has not shown that trial counsel's performance was deficient.

Additionally, the Petitioner did not identify the witness who he claims trial counsel failed to investigate and did not call any witnesses to testify at the hearing. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 758 (Tenn. 1990). Because the Petitioner failed to call any witnesses to support his defense at the hearing, he cannot show that his defense was prejudiced by trial counsel's failure to investigate witnesses.

*Id.* He also has not demonstrated what any additional investigation into his claim of duress would have revealed. Accordingly, he has failed to establish prejudice.

The Petitioner also claims that trial counsel failed to explain the plea agreement to him. Trial counsel testified that she conferred with the Petitioner on multiple occasions, during which she conveyed the State's plea offers to the Petitioner in detail. She stated that the Petitioner expressed a desire to accept a plea offer allowing him to be released from confinement and that, when he was presented with such an offer, he accepted it. The Petitioner testified that he did not understand the plea agreement and that he believed he was charged with joyriding instead of burglary. The post-conviction court credited trial counsel's testimony and did not credit the Petitioner's testimony. The court found that the transcript showed that the Petitioner "under no circumstances could have thought he was pleading guilty to joyriding." The evidence does not preponderate against the post-conviction court's findings. *See Ward*, 315 S.W.3d at 465. Therefore, the Petitioner has failed to establish that trial counsel's representation concerning the plea agreement was deficient.

## II. Voluntariness of the Petitioner's Guilty Pleas

The Petitioner also claims that his pleas were not entered knowingly and voluntarily. Due process requires that a criminal defendant's guilty plea be "knowing and voluntary." *Johnson v. State*, 834 S.W.2d 922, 923 (Tenn. 1992) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)). A guilty plea comports with due process where it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Jaco v. State*, 120 S.W.3d 828, 831 (Tenn. 2003) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this assessment, courts must consider circumstantial factors, including:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897 (Tenn. 1993). A reviewing court must consider the totality of the circumstances surrounding a petitioner's plea of guilty. *State v. Turner*, 919 S.W.2d 346 (Tenn. Crim. App. 1995).

The Petitioner claims that his pleas were not entered knowingly and voluntarily because he only had a fourth-grade education, he was under duress at the time he entered the pleas, and he was mistaken about the offenses to which he was entering guilty pleas. He alleges that his lack of understanding and distraction during the plea colloquy led him to incorrectly state that he understood the terms of his guilty pleas.

The record reflects that trial counsel conferred with the Petitioner about his case and advised him of his options when discussing the State's offers. During the plea hearing, the trial court inquired extensively into the Petitioner's understanding of his guilty pleas, including the charges to which he was pleading guilty and the sentences. The Petitioner confirmed that he understood his plea agreement and wanted the trial court to approve it. "A petitioner's testimony at a guilty plea hearing 'constitutes a formidable barrier' in any subsequent collateral proceeding because 'solemn declarations in open court carry a strong presumption of verity.'" *Bruce S. Rishton v. State*, No. E2010-02050-CCA-R3-PC, 2012 WL 1825704, at *17 (Tenn. Crim. App. May 21, 2012) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). The post-conviction court did not credit the Petitioner's post-conviction hearing testimony, citing his guilty plea hearing testimony regarding trial counsel's representation and his understanding of his case, the criminal justice system, and the implications of his pleas. Trial counsel testified that the Petitioner wanted to accept an offer allowing him to be released from confinement. After being presented with several options, the Petitioner selected the offer permitting him to be released from confinement to serve his sentence on probation supervised by community corrections. Only once his alternative sentence was revoked in September 2020 and he was placed back in confinement did he file the current petition alleging that his pleas were not knowing and voluntary. The Petitioner presented no evidence at the post-conviction hearing that he was under duress when he entered the pleas, and the trial court found that he understood the nature of the offenses to which he was pleading guilty. We conclude that the Petitioner pleaded guilty knowingly and voluntarily under the totality of the circumstances. Accordingly, the Petitioner is not entitled to relief.

## CONCLUSION

Based on the foregoing reasons, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE